UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

APR 26 2018

DAVELL ARTIS, et al.,

        Plaintiffs,

v.                                          Civil No. 2:17cv595

LYON SHIPYARD, INC.,

        Defendant.

## MEMORANDUM ORDER

This matter is before the Court on a motion to dismiss and compel arbitration filed by defendant Lyon Shipyard, Inc. ("Lyon" or "Defendant") against a subset of the named plaintiffs in this case (hereinafter, "Arbitration Plaintiffs").[1] ECF No. 25. The Arbitration Plaintiffs oppose Defendant's motion, and argue in the alternative that, if arbitration is ordered by the Court, the Court should stay, rather than dismiss, the Arbitration Plaintiffs' claims. ECF No. 31. Also pending before the Court are two motions collectively filed by all Plaintiffs, the first seeking leave to file a second amended complaint, ECF No. 37, and the second seeking leave to file a sur-reply to Defendant's motion to dismiss and compel arbitration, ECF No. 39. For the reasons set forth below, the Court **GRANTS** the motion for leave to file a sur-reply, **GRANTS**,

---

[1] The seven Arbitration Plaintiffs are: Michael Blunt, Ronnell Brothers, Erique Ingram, Gabriel Jimenez, Husamiddin Mubashshir, Michael Perry, and Edward Washington.

in part, and **DENIES, in part,** the motion to dismiss and compel arbitration, and **DENIES, without prejudice,** the motion for leave to file an amended complaint.

### A. Motion for Leave to file Sur-Reply

Plaintiffs' motion for leave to file a sur-reply is **GRANTED.** ECF No. 39. Because Defendant presented new exhibits in its supplemental filing that are material to Arbitration Plaintiffs' challenge to the enforceability of one of the written arbitration agreements at issue, Plaintiffs should be afforded the opportunity to respond to such supplemental filing. The Court is unclear why Defendant so strongly opposes Plaintiffs' concise sur-reply responding to Defendant's supplemental brief/exhibits, particularly because Defendant's filing was submitted <u>without leave of court</u>. However, regardless of the reason behind such opposition, Arbitration Plaintiffs clearly deserve the opportunity to respond to Defendant's newly submitted evidence, and accompanying limited argument. Accordingly, the proposed sur-reply is deemed properly filed on the docket, and its contents have been fully considered by the Court.

### B. Motion to Dismiss and Compel Arbitration

In conjunction with Arbitration Plaintiffs' past employment with Lyon, or temporary work performed through a placement agency, each of the seven Arbitration Plaintiff "employees"

2

signed a multi-page written arbitration agreement. Pursuant to such written contracts, both Lyon and the named individual agreed to mediate and, if necessary, arbitrate most claims arising out of the employment relationship. See, e.g., ECF Nos. 26-1, 26-6. Included within each of the written contracts is a paragraph titled "Exclusive Remedy, which states as follows:

> For Claims covered by this Agreement, mediation followed by arbitration is the parties' exclusive legal remedy. <u>The arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement</u>, or the validity of any Claim.

ECF No. 26-1 ¶ 8.q; 26-6 ¶ 6.q (emphasis added).[2]

---

[2] The parties have each submitted evidence outside the pleadings in support of their respective positions on the motion to dismiss and compel arbitration. Neither party challenges the opposing party's submission of such evidence, nor does either party suggest that is it improper for the Court to consider the evidentiary submissions. Accordingly, the Court considers such <u>unopposed</u> submissions, noting that such exhibits are proper under at least one of the following theories: (1) under Rule 12(b)(1), U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC, 119 F. Supp. 3d 512, 523-24 (S.D.W. Va. 2015) (likening the motion to compel arbitration to a Rule 12(b)(1) "factual attack" on the plaintiff's jurisdictional allegations and applying the review standard applicable to summary judgment motions); (2) after converting Defendant's motion into a motion for summary judgment pursuant to Rule 12(d), Kabba v. Rent-A-Center., No. PWG-17-211, 2017 WL 1508829, at *2-*3 (D. Md. Apr. 27, 2017) (finding that each party's submission of external exhibits provided the other with sufficient notice/opportunity such that the court could treat the motion to dismiss or to compel arbitration as a summary judgment motion); or (3) under the Federal Arbitration Act ("FAA"), which involves application of a standard similar to summary judgment, Meridian Imaging Sols., Inc. v. OMNI Bus. Sols. LLC, 250 F. Supp. 3d 13, 16 n.5 (E.D. Va. 2017) (noting that it is "well-settled that '[i]n deciding motions to compel [arbitration], courts apply a standard similar to that applicable for a motion for summary judgment,'" and that it "is appropriate—indeed necessary—to consider materials outside the pleadings" (alteration in original) (quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016))); cf. Shaffer v. ACS Government Servs., Inc., 321 F. Supp. 2d 682, 683 (D. Md. 2004) ("[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment.").

3

The second provision in the Exclusive Remedy paragraph, which is emphasized above, is commonly referred to as a "delegation provision," as it purports to delegate to the arbitrator the authority to determine <u>threshold questions of arbitrability</u>, matters that would otherwise be resolved by this Court. See <u>Kabba v. Rent-A-Center, Inc.</u>, No. 17-1595, 2018 WL 1778550, at *1 (4th Cir. Apr. 13, 2018) ("Unless the contract states otherwise, a court will presume that it, rather than an arbitrator, will decide any disputes regarding arbitrability . . . ."); <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 68-69 (2010) ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); 1 Commercial Arbitration § 19:13 ("Because the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute, even a dispute over whether the underlying dispute is subject to arbitration."). In <u>Rent-A-Center</u>, the Supreme Court categorized delegation provisions as "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." <u>Rent-A-Center</u>, 561

4

U.S. at 70. Here, the clarity of the written delegation provision is not effectively challenged by Plaintiffs,[3] and but for Plaintiffs' challenge to the contract formation process (a challenge analyzed below), Defendant has established a "clear and unmistakable" <u>manifestation of intent</u> to shift the determination of gateway questions of arbitrability from the court, to the arbitrator. <u>Id.</u> at 69 n.1; <u>see</u> <u>Carson v. Giant Food, Inc.</u>, 175 F.3d 325, 330-31 (4th Cir. 1999) ("Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect."); <u>Jones v. Waffle House, Inc.</u>, 866 F.3d 1257, 1267 (11th Cir. 2017) (noting that the court "look[s] to the wording of the delegation provision itself" to determine whether the parties "manifested a clear and unmistakable intent to arbitrate gateway issues").

Although federal courts must determine the enforceability of an antecedent delegation provision when a challenge is advanced, a party cannot successfully attack a delegation clause by arguing that the substantive terms of the underlying

---

[3] The Court rejects Arbitration Plaintiffs' contention that the clarity of the delegation provisions at issue are undercut by a provision located several pages later in the contracts, with such later provision indicating that a court may modify or interpret the contract to render it enforceable. Such later provision is a "savings clause," and when read in context, it does not modify the interpretation of the substantively lawful, and unambiguous, delegation provision.

5

arbitration contract are unconscionable. Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 867 F.3d 449, 455 (4th Cir. 2017). Rather, a challenger must specifically dispute the enforceability of the delegation provision itself, because if such antecedent agreement is not itself proven to be invalid, the arbitrator retains "exclusive authority to determine whether the arbitration agreement [is] unconscionable." Id. (citing Rent-A-Center, 561 U.S. at 72-74). Accordingly, here, the Court must first determine whether Arbitration Plaintiffs squarely challenge the enforceability of the contractual delegation provision, and if so, must then decide "whether the delegation provision is unenforceable 'upon such grounds as exist at law or in equity.'" Id. (quoting 9 U.S.C. § 2).

First, the Arbitration Plaintiffs clearly challenge the enforceability of the delegation provision, asserting that it is unconscionable in a section of their brief titled "The Delegation Clause is Unenforceable." ECF No. 31, at 14-18. Turning to the merits of such challenge, Arbitration Plaintiffs argue that the severable delegation clause is both procedurally and substantively unconscionable. ECF No. 31, at 14-17; see Sanders v. Certified Car Ctr., Inc., 93 Va. Cir. 404, 406 (2016) (noting that courts "will not enforce a contract or contract

6

provision if it is both procedurally and substantively unconscionable").[4]

As to procedural fairness, Arbitration Plaintiffs assert that they were forced into signing the arbitration agreements based on the threat of being fired, further asserting that they were not provided copies of the arbitration contracts. Plaintiffs fail, however, to demonstrate that they agreed to the delegation provisions under "duress," or that they were otherwise compelled to agree to delegate threshold questions of arbitrability through a written document tantamount to an unconscionable adhesion contract. See Goode v. Burke Town Plaza, Inc., 246 Va. 407, 411, 436 S.E.2d 450, 452-53 (1993) ("Duress exists when a defendant commits a wrongful act sufficient to prevent a plaintiff from exercising his free will, thereby coercing the plaintiff's consent. Because the application of economic pressure by threatening to enforce a legal right is not a wrongful act, it cannot constitute duress.") (citations omitted). As explained by the Virginia

---

[4] As recently explained by the Fourth Circuit in a case applying Virginia law:
> Unconscionability has both a substantive and procedural element. The former requires a "gross disparity in the value exchanged." The latter necessitates inequity and bad faith in "the accompanying incidents . . ., such as concealments, misrepresentations, undue advantage, oppressions on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like."

Lee v. Fairfax Cty. Sch. Bd., 621 F. App'x 761, 763 (4th Cir. 2015) (omission in original) (quoting Chaplain v. Chaplain, 54 Va. App. 762, 682 S.E.2d 108, 113-14 (2009)).

7

Supreme Court, "[i]n the absence of fraud, <u>duress</u>, or mutual mistake, a person having the capacity to understand a written document who reads it, <u>or, without reading it or having it read to him, signs it</u>, is bound by his signature." <u>Metro Realty of Tidewater, Inc. v. Woolard</u>, 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982) (internal quotations and citation omitted) (emphasis added). Accordingly, regardless of the Arbitration Plaintiffs' subjective views of the "fairness" of the arbitration contracts at the time they were proposed by Defendant, the law plainly allows "at-will" employers to condition employment on lawful requirements, including a company policy mandating that all employees execute an arbitration agreement containing a delegation provision. See <u>Negri v. Nw. Mut. Life Ins. Co.</u>, 165 F. App'x 247, 249 (4th Cir. 2006) (noting that because the plaintiff "was an at-will employee, [the defendant] would have been perfectly within its rights if it had fired him," and that a "threat to enforce a legal right cannot constitute duress" under Virginia law (citing <u>Goode</u>, 246 Va. at 411, 436 S.E.2d at 452-53); <u>Bennett v. Dillard's, Inc.</u>, 849 F. Supp. 2d 616, 620 (E.D. Va. 2011) (explaining that because the plaintiff "had the right to work elsewhere, rather than accept [the employer's] terms of employment . . . the arbitration agreement is not a contract of adhesion or otherwise unconscionable").

8

Notably, here, Plaintiffs' own evidence demonstrates that three Arbitration Plaintiffs <u>elected not to read</u> (or to merely skim) the contract containing the delegation provision prior to singing it. As to the other four Arbitration Plaintiffs (who may, or may not, have reviewed the terms of the contract prior to signing it), they each admit to <u>electing</u>[5] to sign the contract containing the delegation provision after being told that signing the contract would result in the surrender of <u>far more expansive rights</u> than merely surrendering the right to have a judge determine <u>gateway questions</u> of arbitrability.[6] Cf. ECF Nos. 31-1 through 31-7 (affidavits from Arbitration Plaintiffs

---

[5] Although each of these four Plaintiffs indicates that he felt pressured to sign the arbitration agreement, and asserts, either directly or through inference, that he did not want to sign it, based on the record before the Court, the decision to sign the contract for each of these individuals clearly remains an "election" as each individual <u>chose</u> to sign the contract <u>because</u> he did not want to lose his job.

[6] Arbitration Plaintiffs collectively assert that they did not carefully read (or cannot remember reading) the respective contract prior to signing it, and that they were not provided a copy of the contract after signing it; however, none of the Arbitration Plaintiffs assert that they asked, and were denied, time to read the contract prior to signing it. Moreover, to the extent Arbitration Plaintiffs contend that Defendant made verbal misstatements about the contracts' contents, not only was each competent adult legally responsible for reviewing the terms of the contract prior to signing it, but the boldfaced, all capitals, underlined, and large font titles on the front cover page clearly identified the purpose of the contracts, with the titles reading either "<u>**EMPLOYMENT AND ARBITRATION AGREEMENT**</u>" or "<u>**TEMPORARY WORKER ARBITRATION AGREEMENT**</u>." ECF Nos. 26-1, 26-6. Furthermore, the very last sentence of the contracts, appearing in all capital letters, states: "BY SIGNING THIS AGREEMENT, EACH PARTY ACKNOWLEDGES THAT THEY ARE GIVING UP THEIR RIGHT TO A JURY OR COURT TRIAL." <u>Id.</u> Accordingly, none of the Plaintiffs advance sufficient evidence for a reasonable factfinder to conclude <u>both</u> that the employee signatory was ignorant of the fact that signing the contract shifted threshold questions of arbitrability from a court to an arbitrator <u>and</u> that <u>Defendant</u>, through concealment or misstatement, is responsible for Plaintiffs' ignorance of such matter.

asserting as follows: **Mubashshir**-did not read the contract prior to signing it because he assumed it was like past paperwork; **Perry**-was given a packet of documents and did not read them because he believed them to be the same as past documents; **Ingram**-was given a packet of documents and he signed them after reviewing the packet for no more than ten minutes; **Jimenez**-signed the contract even though he was told he was <u>giving up the right to speak to an attorney in the future</u> because all claims had to be processed internally through Lyon's Human Resources Department; **Brothers**-signed even though he was told that Lyon wanted to avoid lawsuits and that signing the agreement would keep all complaints about Lyon within the company; **Blunt**-signed <u>two weeks after</u> he was told that the agreement to arbitrate was to protect Lyon so that it wouldn't be liable for what occurred at the shipyard; **Washington**-signed even though he was told that the agreement was to keep matters internal and that, <u>after signing</u>, he could not speak with an attorney and would have to go through arbitration). Accordingly, Arbitration Plaintiffs fail to demonstrate that Defendant utilized an unconscionable procedure to compel Plaintiffs to agree to the clearly worded delegation provision. Plaintiffs further fail to challenge the authenticity of the signatures on the contracts, and they do not present sufficient evidence for a reasonable factfinder to conclude that the employee signatures fail to manifest the

10

signor's intent to be bound by the terms of the written delegation clause.

Turning to Arbitration Plaintiffs' assertions that the delegation provisions are substantively unconscionable, as noted above, litigants are generally prohibited from relying on terms outside a delegation provision to prove the unconscionability of the delegation provision.[7] That said, the Court finds that Arbitration Plaintiffs appropriately attack the contractual delegation provisions through cross-referencing the provisions establishing the forum for arbitration, because the contractual terms dictating permissible forums bear directly on the suitability of such forum for deciding threshold questions of arbitrability. See ECF No. 31, at 16-17 (citing Parm v. Nat'l Bank of California, N.A., 835 F.3d 1331, 1336-37 (11th Cir. 2016) (involving an arbitration contract mandating arbitration in an illusory forum)). Having fully considered Arbitration Plaintiffs' argument on this point, the Court agrees with Defendant that the contract clauses at issue in this case are easily distinguishable from Parm, because although the instant contracts provide some flexibility regarding the selection of a neutral arbitrator, allowing multiple permissible options does not render the forum "illusory." Notably, here, the contracts

---

[7] For example, contractual terms that could operate to limit the relief available (such as shortening the limitations period) are conceptually unrelated to the analysis of the severable delegation provision. See Minnieland Private Day Sch., 867 F.3d at 455.

11

require: (1) a neutral mediator/arbitrator; (2) local arbitration in Norfolk, Virginia; (3) Lyon to bear the arbitration "filing fees and arbitrator expenses"; and (4) that the arbitration "shall be conducted pursuant to the Employment Dispute Resolution Rules of the American Arbitration Association, or equivalent state law, or as otherwise mutually agreed by the parties." ECF No. 26-1 ¶¶ 8, 8e, 8f, 8m. As noted by Defendant, Plaintiffs offer only a theoretical challenge to the arbitral forum, and if there is an actual, rather than hypothetical, controversy selecting a local arbitrator, this Court has the statutory authority to designate a suitable arbitrator. See 9 U.S.C. § 5 (noting that if, for any reason, there is "a lapse in the naming of an arbitrator[,] . . . the court shall designate and appoint an arbitrator").[8] Because the arbitration contracts do not create an illusory forum,[9] and the bi-lateral delegation provision does not restrict

---

[8] The Court similarly rejects Plaintiffs' associated challenge to the lack of clear arbitration rules, as the contracts expressly provide for default rules (AAA rules, or state law equivalent) which are applicable unless the parties mutually agree otherwise. While such provision allows for some flexibility, such fact does not render the dispute resolution procedure "illusory" as argued by Plaintiffs.

[9] Arbitration Plaintiffs' attempted reliance on the contractual "fee shifting" provisions fares no better, as Plaintiffs fail to demonstrate that the potential for shifting attorney's fees render the arbitral forum prohibitively expensive and/or illusory. While the contractual "Dispute Resolution Provisions" do provide that attorney's fees can be recovered if a claim or defense is advanced without "substantial justification," such provision applies to both parties. Therefore, inasmuch as a former employee can be penalized for raising a baseless claim, Defendant can likewise be penalized, to a former employee's benefit, for advancing a

12

or alter any substantive rights Plaintiffs may have to recover for unlawful discrimination, Plaintiff fails to demonstrate that it is substantively unconscionable.

For these reasons, Arbitration Plaintiffs fail to demonstrate that conditioning continued employment on the signing of a delegation provision was procedurally unconscionable, or that the terms of the delegation provision (including terms governing the arbitral forum) are substantively unconscionable.[10] The delegation clauses are therefore

---

baseless defense that increases the cost of arbitration. Plaintiffs fail to demonstrate that such bi-lateral provision is "unconscionable," particularly when considered in the limited context involving the potential for shifting attorney's fees incurred only to resolve threshold questions of arbitrability. Plaintiffs similarly fail to demonstrate unconscionability based on the broad indemnification provision located outside the "Dispute Resolution Provisions" of the contracts. See ECF No. 26-1 ¶ 7. Importantly, the multi-page Dispute Resolution Provision contains a specific, and far narrower, fee shifting rule that, as discussed above, appears eminently fair to employees. See Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 573, 709 S.E.2d 163, 170 (2011) ("[A] specific provision of a contract governs over one that is more general in nature.").

[10] Plaintiff Jimenez, and to a lesser extent Plaintiff Brothers, has the strongest argument that improper pressure was exerted by Defendant, with Jimenez asserting that: (1) a co-coworker was told that he could not take the contract home to review before signing it; and (2) that Jimenez was "never given the opportunity to read" the contract before signing it. ECF No. 31-1. While it is unclear whether such factual assertions can be credited in light of the fact that they contradict express contractual clauses, see ECF Nos. 26-3 (stating that the contract was read prior to signing, that an opportunity was provided to consult with counsel, and that a copy was provided), accepting Plaintiffs' factual allegations as true for the purposes of this motion, Defendant's suspect actions still do not appear to rise to the level necessary to establish "procedural unconscionability" with respect to the antecedent agreement to delegate questions of arbitrability. Notably, neither Jimenez or Brothers asserts that he asked for time to read the contract, or asked to speak to counsel, but was denied such opportunity. Moreover, neither individual asserts that he was physically threatened, that he was unaware that he was signing an arbitration agreement, or that the written delegation provision was

enforceable, and gateway questions of arbitrability must be decided by an arbitrator, not this Court. The Court reiterates that its analysis and holding is limited to analyzing the enforceability of the delegation provision, and the Court's ruling should <u>not</u> be interpreted as reflecting any view on how the arbitration agreement should be interpreted or applied. Not only is such determination a matter exclusively for the

---

hidden and/or difficult to understand (had he taken the time to read it). Additionally, although Plaintiffs highlight Defendant's alleged nefarious motives regarding <u>substantive terms</u> of the arbitration contracts, there is no link between the alleged motive/pressure/unequal bargaining power and the severable antecedent agreement to delegate threshold questions of arbitrability. <u>Cf. Ash-Will Farms, L.L.C. v. Leachman Cattle Co.</u>, 61 Va. Cir. 165, 169 (2003) (noting that, once a contract containing a forum selection clause is proven, allegations of "fraud sufficient to vitiate the forum selection provision <u>must be directed specifically at the insertion of the forum selection clause in the contract</u>") (emphasis added); <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 & n.14 (1974) (noting that an "agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause"). Accordingly, even when viewing the evidence in the light most favorable to Jimenez and Brothers, Plaintiffs' allegations demonstrating a disparity of bargaining power are insufficient to create a genuine issue of fact regarding whether such disparity rose to the level of procedural <u>unconscionability</u>.

Alternatively, assuming that Plaintiffs' allegations support a finding of procedural unconscionability, Plaintiffs fall <u>so far short</u> of demonstrating that the bi-lateral delegation provisions are substantively unconscionable that no reasonable factfinder, considering <u>both</u> procedural and substantive fairness, could conclude that the challenged delegation provisions are legally unenforceable. See <u>Mgmt. Enterprises, Inc. v. Thorncroft Co.</u>, 243 Va. 469, 473, 416 S.E.2d 229, 231 (1992) (explaining that, to qualify as unconscionable, the "inequality must be so gross as to shock the conscience") (citation omitted); <u>Rose v. New Day Fin., LLC</u>, 816 F. Supp. 2d 245, 257-59 (D. Md. 2011) (holding that even though "a reasonable fact finder could conclude that the arbitration agreements" at issue are "procedurally unconscionable contracts of adhesion" under Maryland law, the contracts were enforceable because there was "no genuine dispute" as to the lack of <u>substantive</u> unconscionability). Arbitration Plaintiffs Jimenez and Brothers, of course, may ultimately prove through arbitration that the questionable procedure, coupled with the restrictive terms of the underlying arbitration agreement, render the arbitration contract itself (not the antecedent delegation provision) unconscionable. However, such conceptually distinct issue may not color this Court's analysis of the enforceability of the severable delegation clause.

arbitrator, but Plaintiffs' unconscionability arguments necessarily turn on unresolved matters of contract interpretation.[11]

Having found the delegation provisions to be enforceable, the Court elects to **STAY** all further proceedings in this case as to Arbitration Plaintiffs, rather than to dismiss such claims as requested by Defendant. Arbitration Plaintiffs appear to have a colorable basis to challenge the enforceability of the arbitration contracts, and, if successful, certain Plaintiffs could return to this Court to litigate the claims Defendant seeks to dismiss. As this Court's jurisdiction over the case is not otherwise in question, even assuming that this Court has the authority to dismiss the claims advanced by Arbitration Plaintiffs, cf. Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 376 n.18 (4th Cir. 2012), the Court declines to exercise such discretion, finding that because substantive issues of arbitrability remain unresolved, dismissal is not appropriate.

---

[11] One of Arbitration Plaintiffs' primary arguments in support of a finding of unconscionability is that the arbitration agreement unreasonably shortens the limitations period and was nefariously devised by Defendant in order to extinguish then-existing legal claims dating back more than one-year. However, the contracts at issue do not expressly indicate whether the limitations provision applies retroactively, and unless and until such potential contractual ambiguity is resolved, the "equity" of the challenged provision cannot be evaluated. Similarly, the express terms of the contractual limitations period states that the one-year limitations period applies "except as otherwise provided by law," and unless and until such contractual phrase is interpreted to determine whether such agreement can act to "shorten" an "otherwise applicable" limitations period applicable to ripe claims, the "equity" of such provision cannot be evaluated.

### C. Motion for Leave to Amend

Plaintiffs' motion for leave to file a second amended complaint was filed collectively by all Plaintiffs; however, the only substantive proposed changes relate to retaliation claims advanced by Arbitration Plaintiffs. In light of this Court's ruling granting the motion to compel arbitration, the motion seeking leave to amend is **DENIED as moot**. ECF No. 37. Such denial, however, is **without prejudice** to Arbitration Plaintiffs' ability to refile a motion seeking leave to amend should one or more of such individuals establish, through mediation/arbitration, that the arbitration contract such person signed is not enforceable. In the absence of such contingent future event, there appears to be an insufficient basis for the remaining Plaintiffs to again amend the complaint as they fail to demonstrate a need to make the proposed minor corrections to the amended complaint.[12]

### D. Summary

For the reasons stated above: (1) Plaintiffs' motion for leave to file a sur-reply is **GRANTED**, ECF No. 39; (2) Defendant's motion to dismiss and compel arbitration is **GRANTED** to the extent it seeks to compel arbitration, but is **DENIED** to

---

[12] The Court does not dispute Arbitration Plaintiffs' suggestion in their reply brief in support of amendment that they should be permitted to raise retaliation claims before the arbitrator. ECF No. 45, at 2. However, Arbitration Plaintiffs fail to demonstrate that amendment in this Court is a prerequisite to raising a retaliation claim in a mediation or arbitration proceeding that has yet to commence.

the extent it seeks dismissal of the Arbitration Plaintiffs from this case; and (3) Plaintiffs' motion for leave to file a second amended complaint is **DENIED as Moot**, although such denial is <u>without prejudice</u> to Arbitration Plaintiffs' right to re-file such motion should one or more Plaintiffs successfully challenge the enforceability of the arbitration contracts through mediation or arbitration. Based on such rulings, and pursuant to 9 U.S.C. § 3, this action is hereby **STAYED** as to the seven Arbitration Plaintiffs.

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to counsel of record for the parties.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 26, 2018